## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

JEWEL PRICE, CARLA ALSTON, KIMBERLY AUSTIN-JOHNSON
NANCY BAISDEN. CYNTHIA BOSS, BILLIE BRENDLINGER,
LATONYA BRISCO-THOMPSON, MYRA BROWN, TONI BURTON,
RENEE CHILES, MARY-KAY DOBBS, MARYELLEN DUNNE,
LIOUDMILA DYER, FAWN EHRENREICH, RHONDA GALLIPOLI,
CONNIE GAMARRA, ZOMORA GRANT, MARGARET HAMMELL,
DEBORAH HOLLOWAY, CAROLYN HOLMES, CATHERINE JACOBSON,
SUSAN JEFFERS, LUCILLE KLINE, FRANCES LIVINGSTON, CINDY LYMAN,
GLORIA MAIMONE, IRIS CASSETT MARCHAND, TANISHA MATTHEWS-WRIGHT,
TAMIKO MCNURLAN, LYNN MILLER, MARGO OWENS-WOOTEN, PAMELA PECK,
LUCY GIACOBBI SOTOMAYOR RAY, RACHEL RAY,  CATHY REUSS,
SHERRY RICHARDSON, BARBARA SOLOMON, ANGEL STUMP-WOLFE,
BARBARA SYMANSKI, RONDA THOMSON-SPEARS, MONICA URBAN-KLOHN,
TIFFANY WELCH, DONNA WILLIAMS, and COLLEEN WOOL,

    Plaintiffs,

v.

WAL-MART STORES, INC.,

    Defendant.

_____/

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, JEWEL PRICE, CANDI ALLRED, CARLA ALSTON, KIMBERLY

AUSTIN-JOHNSON NANCY BAISDEN. CYNTHIA BOSS, BILLIE BRENDLINGER,

LATONYA BRISCO-THOMPSON, MYRA BROWN, TONI BURTON, RENEE CHILES,

MARY-KAY DOBBS, MARYELLEN DUNNE, LIOUDMILA DYER, FAWN EHRENREICH,

RHONDA GALLIPOLI, CONNIE GAMARRA, ZOMORA GRANT, MARGARET

HAMMELL, DEBORAH HOLLOWAY, CAROLYN HOLMES, CATHERINE JACOBSON,

SUSAN JEFFERS, LUCILLE KLINE, FRANCES LIVINGSTON, CINDY LYMAN, GLORIA

MAIMONE, IRIS CASSETT MARCHAND, TANISHA MATTHEWS-WRIGHT, TAMIKO

MCNURLAN, LYNN MILLER, MARGO OWENS-WOOTEN, PAMELA PECK, LUCY GIACOBBI SOTOMAYOR RAY, RACHEL RAY, CATHY REUSS, SHERRY RICHARDSON,   BARBARA  SOLOMON,  ANGEL  STUMP-WOLFE,  BARBARA SYMANSKI, RONDA THOMSON-SPEARS, MONICA URBAN-KLOHN, TIFFANY WELCH, DONNA WILLIAMS, and COLLEEN WOOL bring this action against WAL-MART STORES, INC., [Wal-Mart] in their individual capacities.  Plaintiffs, and each of them allege, upon their own personal knowledge and/or upon information and belief, the following:

## INTRODUCTION

1.       This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*., to correct unlawful employment practices that discriminate on the basis of gender and to provide appropriate relief to female employees who were adversely affected by such practices.  As alleged with greater particularity below, Defendant Wal-Mart has engaged in, and continues to engage in, unlawful gender discrimination by (1) denying female employees equal pay for hourly retail store positions and (2) denying female employees equal pay for certain salaried management positions.

2.       This action springs from *Dukes v. Wal-Mart*, the national class action filed more than ten years ago.  In *Dukes*, the United States District Court for the Northern District of California certified a national class of female Wal-Mart and Sam's Club employees challenging Wal-Mart's retail store pay policies as discriminatory against women.  On June 20, 2011, the United States Supreme Court reversed that class certification order, imposing new guidelines for class actions in Title VII employment discrimination cases.

3.       Plaintiffs, all individual prior class members from *Dukes*, bring this action.

**Timeliness**

4.       All claims arising on or after December 26, 1998, which is 300 days before the earliest charge filed with the EEOC by a former member of the *Dukes* class, are timely, as they have been the subject of an EEOC charge and class claims in *Dukes*, and then a subsequent EEOC charge within the deadline following the end of tolling in *Dukes*..

5.       Each Plaintiff has exhausted her administrative remedies and complied with the statutory prerequisites of Title VII by timely filing a charge with the EEOC alleging gender discrimination by Wal-Mart.  The Plaintiffs and class members were members of the national class certified in *Dukes*.  While that certification order was working its way through the appellate process, time periods for filing EEOC charges and subsequent litigation for all former class members were tolled.  On August 19, 2011, the Northern District of California issued an order in *Dukes* establishing common deadlines for all members of the formerly certified class to file individual charges with the EEOC.  The pertinent portion of that order in this case gave former class members in states with a worksharing agreement who would normally have 300 days to file charges, until May 25, 2012 to file a charge.  Each Plaintiff has met that deadline.  Furthermore, each Plaintiff has received her Right to Sue. (See Composite Exhibit A which is a true and correct a copy of the Charges filed by the Plaintiffs together with an Index organized in alphabetical Order;  and See also  Composite Exhibit B, which is a true and correct copy of the Notice and Right to Sue issued to the Plaintiffs and an index, organized in alphabetical order).

- o   Candi Allred
- o   Carla Alston
- o   Kimberly Austin-Johnson
- o   Nancy Baisden
- o   Cynthia Boss
- o   Billie Brendlinger

- o LaTonya Brisco-Thompson
- o Myra Brown
- o Toni Burton
- o Renee Chiles
- o Mary-Kay Dobbs
- o Maryellen Dunne
- o Lioudmila Dyer
- o Fawn Ehrenreich
- o Connie Gamarra
- o Rhonda Gallipoli
- o Zomora Grant
- o Margaret Hammell
- o Deborah Holloway
- o Carolyn Holmes
- o Catherine Jacobsen
- o Susan Jeffers
- o Lucille Kline
- o Frances Livingston
- o Cindy Lyman
- o Gloria Maimone
- o Iris Cassett Marchand
- o Tanisha Matthews-Wright
- o Tamiko McNurlan
- o Lynn Miller
- o Margo Owens-Wooten
- o Pamela Peck
- o Jewel Price
- o Lucy Giacobbi Sotomayor Ray
- o Rachel Ray
- o Cathy Reuss
- o Sherry Richardson

    o  Barbara Solomon

    o  Angel Stump-Wolfe

    o  Barbara Symanski

    o  Ronda Thomson-Spears

    o  Monica Urban-Klohn

    o  Tiffany Welch

    o  Donna Williams

    o  Colleen Wool

6.      This action was filed within 90 days of the issuance of the Notices of the Right to Sue.

## JURISDICTION AND VENUE

7.      Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343(a)(4).

8.      Venue is proper in this district pursuant in that each of the Plaintiffs' claims arose in whole or in part in Florida and many of the acts complained of occurred in this judicial district and gave rise to the claims alleged and/or at least one Plaintiff resides in this district.

9.      Wal-Mart currently operates 293 Wal-Mart stores and Sam's Clubs in Florida where it employs more than 94,000 workers.

10.     Plaintiffs are all female former or current employees of Wal-Mart.

11.     Kimberly Austin Johnson is a female resident of Brevard County, Florida.

12.     Renee Chiles is a female resident of Portage County, Ohio.

13.     Gloria Maimone is a female resident of Palm Beach County, Florida.

14.     Fawn Ehrenreich is a female resident of Seminole County, Florida.

15.     Lynn Miller is a female resident of Lee County, Florida.

16.     Tanisha Matthews-Wright is a female resident of Tulsa County, Oklahoma.

17.     Zomora Grant is a female resident of St. Lucie County, Florida.

18.     Connie Gamarra is a female resident of Miami-Dade County, Florida.

19.     Colleen Wool is a female resident of Pasco County, Florida.

20.     Margaret Hammell is a female resident of Thomas County, Georgia.

21.     Maryellen Dunne is a female resident of Brevard County, Florida.

22.     Lioudmila Dyer is a female resident of Polk County, Florida.

23.     Frances Livingston is a female resident of Hillsborough County, Florida.

24.     Cathy Reuss is a female resident of Lee County, Florida.

25.     LaTonya Brisco-Thomson is a female resident of Lake County, Florida.

26.     Margo Owens-Wooten is a female resident of Orange County, Florida.

27.     Angel Stump-Wolfe is a female resident of Jackson County, Missouri.

28.     Mary-Kay Dobbs is a female resident of Monroe County, Michigan.

29.     Barbara Solomon is a female resident of Gaston County, North Carolina.

30.     Sherry Richardson is a female resident of Osceola County, Florida.

31.     Tamiko McNurlan is a female resident of Mohave County, Arizona.

32.     Nancy Baisden is a female resident of Jackson County, Ohio.

33.     Myra Brown is a female resident of Clay County, Florida.

34.     Pamela Peck is a female resident of Duval County, Florida.

35.     Rachel Ray is a female resident of Newport News County, Florida.

36.     Monica Urban/Klohn is a female resident of Marion County, Florida.

37.     Susan Jeffers is a female resident of Duval County, Florida.

38.     Lucy Giacobbi Sotomayor Ray is a female resident of Hernando County, Florida.

39.     Tiffany Welch is a female resident of Duval County, Florida.

40.     Deborah Holloway is a female resident of Dickson County, Tennessee.

41.     Carolyn Holmes is a female resident of Bradford County, Florida.

42.     Carla Alston is a female resident of Putnam County, Florida.

43.     Barbara Symanski is a female resident of Cherokee County, North Carolina.

44.     Billie Brendlinger is a female resident of Elmore County, Idaho.

45.     Cindy Lyman is a female resident of Jefferson County, Tennessee.

46.     Ronda Thomson-Spears is a female resident of Clermont County, Ohio.

47.     Jewel Price is a female resident of Hancock County, Mississippi.

48.     Toni Burton is a female resident of Sarasota, County, Florida.

49.     Lucille Kline is a female resident of Trenton County, Florida.

50.     Candi Allred is a female resident of Levy County, Florida.

51.     Catherine Jacobson is a female resident of Pasco County, Florida.

52.     Iris Cassett Marchand is a female resident of Broward County, Florida.

53.     Donna Williams is a female resident of Sarasota County, Florida.

54.     Cynthia Boss is a female resident of Duval County, Florida.

55.     Rhonda Gallipoli is a female resident of Duval County, Florida.

56.     Defendant is a Delaware corporation with stores throughout Florida.  Its corporate headquarters are located in Bentonville, Arkansas.  In Florida, Wal-Mart operates retail stores doing business as Wal-Mart Discount Stores, Wal-Mart Supercenters, and Sam's Clubs.

57.     Plaintiffs contend, in each of their employments with Wal-Mart that Wal-Mart engaged in gender discrimination in compensation. The evidence of the discriminatory treatment towards women is their own compelling stories, and those of the hundreds of other female

employees with similar examples of gender discrimination. At all relevant times and during the Plaintiffs' employment, Wal-Mart's compensation policies and practices had a disparate impact, not justified by business necessity, on the Plaintiffs during their employment.

58.     From 1998-2004, Store Managers set pay for hourly employees following guidelines governing compensation.  Each Store Manager reported to their District Manager, and in order to maintain a consistent administration of the pay guidelines, certain hourly pay decisions were reviewed by the District Manager for approval.  Specifically, exceptions to the pay guidelines, as well as some actions within the Guidelines (such as setting starting pay more than 6% above the minimum rate, *see infra* at "Pay Discrimination") were reviewed by the District Manager, who had to decide whether or not to approve the Store Manager's pay decision.  Thus, the Store Managers received regular feedback from the District Managers about their decisionmaking.

59.     District Managers reported to the Regional Vice President ("RVP").  In addition to the formal feedback from District Managers to Store Managers through the hourly pay exception process, both the RVP and District Managers spent a large amount of time touring stores and talking with the Store Managers in those stores.  Similarly, the RVP held regular in-person meetings and conference calls with all the District Managers.  These regular meetings touched on many aspects of store operations, including people issues.  Thus, there was a constant stream of communications with district and regional management that provided feedback to Store Managers about their hourly compensation decisions and guidance about how Wal-Mart regional management expected them to carry out their responsibilities.

60.     The RVP also had overall responsibility for pay increases for Assistant Managers.

61.     Regions 46 and 10 also had one Regional Personnel Manager ("RPM"), who was responsible for starting pay for MIT and Assistant Managers.

62.     Upon information and belief, and at relevant times herein, Defendant's policies provided for "pay bands" for establishing the pay of hourly employees.

63.     Upon information and belief, the pay of the hourly employees was subject to review and approval of District Managers and, at a higher review level, Regional Managers.

64.     Each Plaintiff herein was subject to pay policies which were set in accordance by centralized policies maintained by Defendant.

## PAY DISCRIMINATION

65.     *Common Compensation Policies* — Wal-Mart has set compensation of store-based employees using a common set of guidelines, which Wal-Mart's managers have applied consistently throughout the store(s) where Plaintiffs have worked.   The pay guidelines established basic standards for setting pay rates at hire and subsequent pay adjustments for hourly and salaried employees.

### Hourly Pay

66.     *1998-2004 Hourly Pay Structure* — From 1998 through June 2004, Wal-Mart assigned jobs to five classes, the top two of which were only used for a few specialty jobs.  Jobs were assigned to the same class regardless of department.  Each successive job class had a higher minimum starting pay rate.

67.     The minimum pay levels at hire ("start rates") for each job category were established for the store(s) where Plaintiffs have worked with the approval of the applicable District Managers and RVP.  Thereafter, an employee's pay level could be adjusted: (1) after an initial probationary period; (2) if the employee was promoted to a higher job class or into

management; (3) on an annual basis, if the employee satisfied minimum performance standards; or (4) if the employee had been awarded a special "merit" raise.

68.   The Store Manager had the initial responsibility to set pay rates for individual hourly employees within the pay guidelines, subject to constraints set by the District Manager and RVP.  Where a Store Manager set a pay rate above or below the pay guidelines, the rate was called an "exception."

69.   The pay rate for a new employee could be set up to a maximum of $2 per hour above the start rate, but if the new employee's rate was more than 6% above the established start rate for that pay class, a computer program in the payroll system would prohibit payment at this rate unless and until the Store Manager manually entered the pay rate for that employee.

70.   All hourly pay exceptions were automatically reported to the District Manager, who could approve or disapprove such exceptions.  The RPM was also informed of all hourly pay exceptions and was required to ensure that hourly compensation was consistent among employees in the Region.

71.   In the store(s) where Plaintiffs have worked, District Managers, the RPM, and the RVP regularly received reports of all employees whose hourly pay in a job category is more than 10% below or 5% above the average pay in that category.  District Managers performed quarterly audits of each store's compliance with company policies and Region-specific policies, including compensation policies, which were then reported to the RPM and RVP.

72.   District Managers and the RVP had ultimate authority over whether, and by how much, to adjust the pay of hourly employees, including those employees listed on exception reports.

73.     In the store(s) where Plaintiffs have worked, managers were not required to use job-related criteria, such as job performance or experience, in setting, adjusting, or approving compensation for individual employees.  Managers did not document the reason for setting, adjusting, or approving the compensation of individual employees. The RVP and District Managers did not hold the Store Managers in the store(s) where Plaintiffs worked accountable for the factors the Store Managers use in making pay decisions or in ensuring those factors comported with the law, nor did they require any documentation of the reasons for the compensation paid to individual employees.  Nor did Wal-Mart managers specify the weight to be accorded any particular requirement in setting or adjusting compensation.

74.     *Patterns in Compensation* — Women who held hourly positions in the store(s) where Plaintiffs worked have been regularly paid less than similarly-situated men, although, on average, those women have more seniority and higher performance ratings than their male counterparts.  This gender pay difference adverse to women exists in many of the store(s) where Plaintiffs have worked, even when nondiscriminatory objective factors, such as seniority, performance, store location, and other factors are taken into account.  Wal-Mart engaged in a pattern or practice of paying women employees less than similarly situated men, on the basis of gender.

75.     *Adverse Impact of Hourly Compensation Policies* — Wal-Mart's compensation policies, including its policy of using a set of prescribed factors to set starting pay for hourly associates at a pay rate above the minimum rate, as well as its policy of setting pay adjustments based on the associate's prior pay, have had an adverse impact upon its female employees in the store(s) where Plaintiffs have worked.

76.     The RPM, RVP, and District Managers have received, and continue to receive, regular reports about compensation for hourly and salaried employees within the store(s) where Plaintiffs have worked, showing that female employees are paid less than men on average. These managers therefore had knowledge of the compensation discrimination present in the stores over which they had authority.

77.     Because reasons for compensation decisions are not documented, elements of Wal-Mart's compensation decision-making are not capable of separation for analysis.

78.     *Post-2004 Pay Restructuring* — In 2004, Wal-Mart introduced a new pay structure, in which many jobs which had previously been in one pay class were assigned to separate classes depending on department.  Pay rates differed depending on the pay class in which an hourly employee worked, and therefore the department in which that hourly employee worked.

79.     The proportion of women in Wal-Mart's departments varied greatly.  Many jobs in departments in which women were over-represented were assigned to lower job classes, while those same job titles in departments over-represented by men were assigned to higher job classes.  Wal-Mart's 2004 pay restructuring had an adverse impact on its female employees, including Plaintiffs.

80.     In 2005, Wal-Mart started giving newly hired employees "credits" for prior work experience.  Because each credit was worth more to employees in higher job classes, the application of this credit policy exacerbated the pay disparities and had an adverse impact on female employees, including Plaintiffs.

81.     Then, in 2006, Wal-Mart added a cap on the pay permitted for each job class, further impacting the pay of women relegated to the lower job classes, which had lower pay caps.  This also had an adverse impact on female employees, including Plaintiffs.

**Management Pay**

82.     As with hourly compensation, Wal-Mart issued written guidelines governing management compensation.  These written guidelines applied consistently throughout Regions 46 and 10 and did not vary by district or store.

83.     In most circumstances, these guidelines prescribed a formula for setting starting pay rates which, because it was largely based on prior pay rates, perpetuated disparities in pay adverse to women.  However, exceptions could be sought, and external hires were not subject to the same formula, and in these instances a single decisionmaker—the RPM—decided pay.

84.     *Management Trainee Pay* — Starting in 2002, the MIT pay rate for employees promoted internally was set based on their pay as hourly employees.  Thus, for those promoted from hourly positions, where women on average had lower hourly pay rates, their pay rates in the MIT program were lower than similarly-situated men, perpetuating the prior pay disparities.

85.     While the pay rates for MIT participants who had been hourly Wal-Mart employees was largely governed by formula, the RPM generally was responsible for setting starting pay rates for external hires for whom no formula controlled. Higher pay offered to external candidates as compared to internally-promoted MITs provided another opportunity to pay men more than women in the MIT program.

86.     In addition, any discretion permitted in approving exceptions to managerial pay rates, both for internal and external candidates, was exercised by the RPM.

87.     Because the MIT program was for just a few months, there were no pay changes during the MIT program itself, but only upon successful completion and promotion to Assistant Manager.

88.     *Assistant Manager Pay* — When trainees successfully completed the MIT program and became Assistant Managers, their pay was set by formula, initially $2,000 above MIT pay, which itself was directly tied to the hourly pay rate for internal promotes, as described above.

89.     The pay for Assistant Managers who were external hires into the MIT program was also linked to their rate of pay while in the MIT program, but as described above, their MIT pay provided for higher compensation than for internal candidates.  Any exceptions to these formulaic rules required approval of the RPM.

90.     This formulaic use of prior pay rates to set starting Assistant Manager pay meant prior pay disparities adverse to women would be perpetuated.  And the use of exceptions, all ruled on by a single individual RPM, provided the opportunity to create additional disparities adverse to women.

91.     Assistant Managers also received performance evaluations and associated performance pay increases each year, all on the same date.  These were prepared by the Store Manager and District Manager, which were then reviewed and approved by the RVP.  These performance increases were computed as a percentage of the base pay rate, perpetuating prior disparities in pay.  Performance ratings, all approved by the RVP, could incorporate bias and unfairly rate women Assistant Managers lower than their peers.

92.     In addition to performance increases, Assistant Managers could receive merit increases from 2002 to 2006, which had to be approved by the District Manager and RPM.

These merit increases were computed as a percentage of the base pay rate, perpetuating prior disparities in pay.  And they provided an opportunity for these decisionmakers to exercise bias in choosing whom to favor with these discretionary pay increases.

93.     *Co-Manager Pay* —Co-Manager compensation was comprised of a base salary and profit sharing tied to the profitability of the Co-Manager's store. The RVP determined base salary and assigned the stores at which Co-Managers worked, the profitability of which affects the profit-sharing component of the compensation they receive.  Because some stores are more profitable than others (i.e., better location, fewer nearby competitors), store assignment is a critical component in determining Store Manager Salary.  Women, including Plaintiffs, have been assigned to stores that generate lower profits, and as a result were paid less than their male counterparts.

94.     *Store Manager Pay* — A major part of a Store Manager's compensation is tied to store profitability.  Performance evaluations are not a factor, nor is a Store Manager's ability to execute policies fairly.  The RVP determined assigned the stores at which Store Managers worked.  Because some stores are more profitable than others (i.e., better location, fewer nearby competitors), store assignment is a critical component in determining Store Manager Salary. Women, including Plaintiffs, have been assigned to stores that generate lower profits, and as a result were paid less than their male counterparts.

## WAL-MART MANAGERS RELY ON DISCRIMINATORY STEREOTYPES

95.     In the absence of job-related compensation criteria, Wal-Mart's managers in the store(s) where Plaintiffs have worked, and those supervising the store(s) where Plaintiffs have worked, rely on discriminatory stereotypes and biased views about women in making pay decisions.

96.     A 1998 survey of Wal-Mart managers revealed that there was a "good ol' boy philosophy" at Wal-Mart, that many managers were "close minded" about diversity in the workplace, and that some District Managers "don't seem personally comfortable with women in leadership roles."

97.     The findings of the 1998 survey echoed an earlier 1992 report by a group of female Wal-Mart management employees, who identified a number of concerns for women employees, including the following: "Stereotypes limit the opportunities offered to women," "[c]areer decisions are made for associates based on gender," "[a]ggressive women intimidate men," "men are interviewed as the replacements, women are viewed as support," and "[m]en's informal network overlooks women."

98.     All Wal-Mart Store Managers have been required to attend training programs at the company's Walton Institute.  These managers were advised at the Institute that the reason there are few senior female managers at Wal-Mart is because men were "more aggressive in achieving those levels of responsibility" than women.  Managers were cautioned that efforts to promote women could lead to the selection of less-qualified women over more-qualified men.

99.     On or about January 24, 2004, at a meeting of all Wal-Mart District Managers presided over by Wal-Mart's CEO Thomas Coughlin, the District Managers were told that they were the key to running the stores: "You are the culture."  The key to success was described as "single focus to get the job done. . . .  Women tend to be better at information processing.  Men are better at focus single objective.  Results driven."  The District Managers were instructed to create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders."

100.    In deciding which employees to promote as department managers — hourly positions which were often stepping stones into salaried management — Store Managers in the

store(s) where Plaintiffs have worked would often consider women only for "female" departments, such as health and beauty, jewelry, softlines, and the service desk.

101.    Managers in the store(s) where Plaintiffs have worked, and managers who supervised those stores, justified denying promotions to women or paying them less than their male employees because of perceived family obligations of the women and male responsibility to support their families or because of their presumed inability to relocate.

## WAL-MART'S INEFFECTIVE ANTI-DISCRIMINATION EFFORTS

102.    For many years, Wal-Mart had no meaningful policies or practices to hold managers in, or managers supervising, the store(s) where Plaintiffs have worked accountable, financially or otherwise, to equal employment and diversity policies and goals.

103.    Starting in 2000, Wal-Mart asked District Managers to set diversity "goals" for advancement of women in management.  The goals were based on each manager's individual views on what was attainable and were not tied to any objective measures of availability or qualifications.   Prior to 2004, failure to meet diversity goals had no financial or other consequence for managers in, or managers supervising, the store(s) where Plaintiffs have worked.

104.    As late as 2003, Wal-Mart CEO Coughlin was not aware of any diversity goals or whether managers had met such goals.  Many Store Managers were also unaware of the existence of any diversity goals.

105.    Until at least 2003, there had never been any diversity goals set for individual stores, or for any compensation practices in the store(s) where Plaintiffs have worked.

## PARTIES

### Region 46

#### Plaintiff Pamela Peck

106.    Plaintiff Pamela Peck was employed from 2001 to 2006 in Store Number 5054 in Jacksonville, Florida.

107.    During her employment, Peck learned that men in positions below her, that she was supervising, were hired in to work at higher rates of pay than her, despite having less experience.

108.    Ms. Peck made complaints to her Manager Steve about the disparity, but nothing was done.

#### Cynthia Boss

109.    Plaintiff Cynthia Boss was employed in 2001 in Store Number 1219.

110.    During employment, she held the position of Customer Service Manager earning $7.00 per hour.

111.    She learned during her employment that her male coworker was making more than her per hour ($1.00 more), despite similar or less experience.

#### Rhonda Gallipoli

112.    Plaintiff Rhonda Gallipoli was employed in Store Number 1408 and other Tampa area stores between 1999 and 2003.

113.    Prior to employment with Defendant, she gained experience working at Frank's Nursery.

114.    She began employment with Defendant in the garden department after she was recruited at her former employment by the Regional Manager.

115.    Ms. Gallipoli exceled in her position and eventually, Defendant reorganized for all garden departments to be under her (previously, outside garden, inside garden, and holiday were under different managers).

116.    During her employment, she learned that her male coworkers in similar positions, like Gary (Last Name Unknown) and Roden (Last Name Unknown) were making $3 to $4 more per hour than her, despite the fact that she was managing more departments.

117.    Ms. Gallipoli complained, but nothing was done to remedy the discrepancy.

118.    Instead, Gary was transferred to another store.

**Plaintiff Tiffany Welch**

119.    Plaintiff Tiffany Welch was employed in 2004 in Store Number 2920.

120.    She was hired into the position of cashier.

121.    During employment, she quickly learned that males in her same position were being hired in at higher rates of pay, despite same/similar experience.

**Plaintiff Nancy Baisden**

122.    Plaintiff Nancy Baisden was employed between 1993 to 2002, in Stores 1519 and 800, and transferring to Jacksonville, Florida, Store Number 1219, around 1999.

123.    Prior to joining Wal-Mart, Ms. Baisden gained grocery experience working as a Deli Department Manager.

124.    While Ms. Baisden worked as an associate for $4.75 per hour, she learned that men, like coworkers Earnest Jackson and Sam Jackson, were making significantly more, despite less experience.

125.    Instead, Ms. Baisden was forced to assist her male coworkers with their job duties, but was getting a quarter of their pay.

126.    She began earning $7.25 per hour, but learned men in similar positions with less experience were getting $14.00 to $21.00 to start.

127.    She sought opportunities from her Store Manager Pete Harris to be in management, but he told her "you can't be management over electronics, we need a man in there."

128.    In total, she applied to at least five (5) management positions, including Grocery Department Manager, Frozen Food Department Manager, and Dairy Department Manager, but was never given an interview, despite prior department management experience and pre-Wal-Mart experience.

129.    Instead, the positions went to males, like Ernest Jackson and Samuel Jackson, who had just begun working for Wal-Mart, whereas Ms. Baisden had 10 years with the company.

130.    Ms. Baisden inquired why she was not getting positions and lack of opportunities for women to her Assistant Store Manager, Richard Graves, who responded with a laugh, "advancement is not that way here" and "you will never go anywhere with this company

**Plaintiff Myra Brown**

131.    Plaintiff Myra Brown was employed between 1989 to 20001 in Store Number 697, joining Wal-Mart with two (2) years' of college courses.

132.    She began employment as a cashier, working her way to layaway and then to the pharmacy department.

133.    During employment, she learned that her male coworkers were making more than her in the same position, despite similar or less qualifications.

134.    She inquired for merit raises, but never received a merit raise.

135.    During employment, she also learned that men were given raises, while her requests were consistently denied.

**Plaintiff Rachel Ray**

136.    Plaintiff Rachel Ray was employed between 2000 and 2001 in Stores 0955 and 0659.

137.    During employment, she learned that her male coworkers were making more than her in the same position, despite similar or less qualifications.

**Plaintiff Monica Urban-Klohn**

138.    Plaintiff Monica Urban-Klohn was employed between 1996 and 2000 in Store number 1847.

139.    Prior to joining Wal-Mart, she worked in Publix, at McDonald's, a pet store, and also at another Wal-Mart location in Orlando and applied for a cashier position with Wal-Mart. Eventually, she was offered a full-time position in the pet department.

140.    Ms. Urban-Klohn learned all she could about the pet department.

141.    She applied to work in the Department Manager position of the Pet Department several times, but the position always went to a male.

142.    Ms. Urban-Klohn was asked to train her male coworkers.

143.    Ms. Urban-Klohn asked her Store Manager, Larry Smith, why she was not promoted as she was performing the role of Department Manager.

144.    She learned from her coworkers that he refused to put a female into the position.

145.    Ms. Urban-Klohn then also learned that males in the same position (or less position) were making more than her.

**Plaintiff Susan Jeffers**

146.    Plaintiff Susan Jeffers was employed from 2000 through 2015 working in Stores 1219 and 3702.

147.    During her employment, she learned that men in similar positions were getting paid more than their female counterparts, despite similar or less experience

148.    Specifically, as merchandise supervisor over the deli, she was paid at a pay scale of 7.

149.    She learned that a male in the meat department, Jason, was 3 pay scales lower than her, but made $2.00 per hour more than her.

150.    She also learned a male in the produce department, Terrence, was on a pay scale of 4, but made just as much as her.

151.    She learned from the Department Manager of Produce, Kevin, what the male employees were making, which was a point of contention as the males were regularly was paid more than their female counterparts.

**Plaintiff Lucy Giacobbi Sotomayor Ray**

152.    Plaintiff Lucy Giacobbi Sotomayor Ray was employed between 1996 and 2010 in Stores 1213, 0967, 1085.

153.    During her employment, Ms. Ray worked with Department Manager Richard Baldwin and Store Manager Jeff Sexton.

154.    As a single mother, she requested a transfer from 1213 to Sam's Club because the pay was higher. However, her request for transfer was denied by her Store Manager, Mr. Sexton.

155.    During employment, she asked Mr. Baldwin why her raises were so small – she was performing the same job that three (3) men were doing. Mr. Baldwin told her, "if you were a man, you would have received a larger raise."

**Plaintiff Tiffany Welch**

156.    Plaintiff Tiffany Welch was employed in 2004 in Store Number 2920.

157.    Prior to employment, Ms. Welch earned her High School diploma.

158.    During her employment, Ms. Welch learned that the male cashiers were paid more than the women. The men would share their paystubs.

**Plaintiff Deborah Holloway**

159.    Plaintiff Deborah Holloway was employed between 1997 and 2010 in Store Number 1283.

160.    During her employment, she worked under Store Manager Brian.

161.    She learned that men were making more than their female counterparts.

162.    Specifically, she was making $5.80 per hour, but a man on the same shift in the same position as her was making $7.00 per hour, despite similar experience.

163.    She inquired opportunities for advancement, but were told by the Store Manager that there were "better workers" than her – they were all men.

**Plaintiff Carolyn Holmes**

164.    Plaintiff Carolyn Holmes was employed in Store Number 1297 between 1997 and 2005.

165.    During her employment, Ms. Holmes sought raises, but was denied.

166.    In fact, in her entire nine (9) years of employment, Ms. Holmes only received one (1) raise.

167.    Instead, she watched as men were given raises and men starting after her were making more than she was, despite less or similar experience.

**Plaintiff Carla Alston**

168.    Plaintiff Carolyn Alston was employed between 1999 to 2001 in Store Number 0051.

169.    Prior to Wal-Mart, Ms. Alston gained experience as a grocery clerk/cashier at another grocery location.

170.    During her employment, she learned that men were paid more than women, including men in her same position, despite less or similar experience.

**Plaintiff Barbara Symanski**

171.    Plaintiff Barbara Symanski was employed between 1998 to 2012 in Store Numbers 1119 and 0697.

172.    During her employment, she learned that males were paid more than females, despite less or similar experience.

**Plaintiff Billie Brendlinger**

173.    Plaintiff Billie Brendlinger was employed between 2003 and 2004 in Store Number 0967.

174.    Prior to Wal-Mart, Ms. Brendlinger gained sales experience as a telemarketer.

175.    During her employment, Ms. Brendlinger worked her way from a cashier to a Customer Support Manager (CSM).

176.    She learned that males were making more than females in the same positions, despite less or similar experience.

**Plaintiff Cindy Lyman**

177.    Plaintiff Cindy Lyman was employed between 2002 and 2005 in Store Number 3526.

178.    During her employment, she worked in the positions of cash office and cashier. I earned approximately $7.50- $8.00.

179.    While she worked in the cash office, she often trained new employees.

180.    She trained a male named Ramone to work 3rd shift. He was formerly a cashier and was being promoted to  the cash office.

181.     One day he left his pay stub laying on the table in plain view.  Ms. Lyman saw that he was making more than $2.00 dollars more per hour than her.

**Plaintiff Ronda Thomson-Spears**

182.    Plaintiff Ronda Thomson-Spears was employed between 2004 and 2009 in Store Number, 1847.

183.    During her employment, she learned that she was being denied raises, though similar or less qualified males received raises.

184.    She also learned that males were brought in with no experience at higher rates of pay than her – like Tim Thompson, who was brought in at a higher rate as a sales clerk, despite Ms. Thomson-Spears working at the company for ten (10) years.

185.    Ms. Thomson-Spears complained about the disparities, to no avail.

**Plaintiff Jewel Price**

186.    Plaintiff Jewel Price was employed between 2005 and 2010 in Jacksonville, Florida, Store Number 1082 and in Sidwell, Florida.

187.     Prior to Wal-Mart, Ms. Price gained experience as a Housekeeper Supervisor and earned her High School diploma, in addition to college courses.

188.     During her employment, Ms. Price learned that males in substantially similar positions were making more than her and other women, despite same or less experience.

189.     After approximately two (2) years in the Jacksonville store, her then- boyfriend, Darryl Walker, came in and was hired for a job with no experience. He received a starting salary nearly $2.00 more than what she was making at the time.

190.     Ms. Price spoke with Bonnie, co-manager, about the discrepancy, and she said she was having trouble herself with discrimination based on sex.

191.     Specifically, she told Ms. Price about a situation she had where a new, male applicant off the street was hired for a store manager position over her.

192.     Ms. Price then spoke with Juan, another co-manager, about the discrepancy and he was arrogant about the situation. He told her that Wal-Mart believes that men are leaders and women have to listen and follow.

193.     Ms. Price learned that even men in pay band 3 who were subordinate stockers were making more than her, when she was in a pay band 5 in the meat department.

194.     Additionally, men in the meat department in the same position as her made more than she did, even though they had the same duties.

**Plaintiff Toni Burton**

195.     Plaintiff Toni Burton was employed between 1997 and 2000 in Store Number 860 in Deland, Florida.

196.     Prior to joining Wal-Mart, she earned her High School Diploma and took college courses in psychology.

197.    She began with Wal-Mart as a cashier and then was trained to be a Customer Service Manager (CSM).

198.    During her employment, she learned that males in substantially similar positions were making more than her and other women, despite same or less experience.

**Plaintiff Lucille Kline**

199.    Plaintiff Lucille Kline was employed between 20001 and 2010 in Store Number 1297, in Chiefland, Florida.

200.    During her employment, Ms. Kline inquired to management for opportunities of raises, but were denied.

201.    During her employment, she learned that males in substantially similar positions were making more than her and other women, despite same or less experience.

202.    Specifically, while working, she saw males' paychecks as she had responsibilities to cash paychecks for employees and learned that they were making more than her.

**Plaintiff Candi Allred**

203.    Plaintiff Candi Allred was employed between 1996 and 1999 in Store Number 1297.

204.    During her employment, she was hired into the meat department as part of the clean-up crew.

205.    While employed, she learned from a male coworker of his pay and the pay of the other males in her department – they were making more than her.

206.    After working for years in the meat department, she only finally received a raise after she complained to her manager about the pay discrepancy and let him know she would resign if he did not correct the situation.

**Region 10**

**Plaintiff Kimberly Austin-Johnson**

207.    Plaintiff Kimberly Austin-Johnson was employed between 1998 and 2003 in Store Number 0771.

208.    During her employment, she learned that a male coworker, who did not have any experience in his position, was hired in at a higher rate of pay than her ($6.25 per hour her pay versus $8.00 per hour his).

209.    She also learned that men in her same position received higher raises.

210.    When Ms. Austin-Johnson inquired about the disparity, she was told by management that it was "all they could give."

**Catherine Jacobson**

211.    Plaintiff Catherine Jacobson was employed between 1998 and 2002 in Store Number 994.

212.    Ms. Jacobson began as a cashier at Wal-Mart and eventually became a department manager.

213.    During her employment, she learned that the male employees made more money than the female.

214.    For instance, she trained one male cashier who was a new hire and he was making more than her even though she had been there for several years.

215.    Once she became department manager, she learned that another male department manager was making $2-3.00 an hour more than me even though he had less experience than her.

**Plaintiff Renee Chiles**

216.     Plaintiff Renee Chiles was employed between 1996 to 2007 in Store Numbers 1957, 1119, 5391, and 5055.

217.     During her employment, she learned that males in her same position were making more, despite similar experience.

218.     Ms. Chiles complained to her manager Linda as well as her manager Tom Dupall about the disparity and was told that there was nothing they could do.

**Plaintiff Gloria Maimone**

219.     Plaintiff Gloria Maimone employed between 2002 to 2010 in Store Number 1541.

220.     During her employment, she worked in Health & Beauty, Cosmetics, the OTC manager program, and then as a manager for the Pharmacy department.

221.     She learned that her male coworkers were making more than her, despite similar or less experience. These males included Manager Timothy and Mitchell.

**Plaintiff Fawn Ehrenreich**

222.     Plaintiff Fawn Ehrenreich was employed between 1996 to 2000 in Store Numbers 1957, 1119, 5391, and 5055.

223.     She resigned in 2000 after being denied increases in pay.

224.     During her employment, she learned that males in her same position were making more, despite similar experience.

225.     Specifically, as a cashier, she learned from her male coworkers that they made more money than her and her female coworkers.

**Plaintiff Lynn Miller**

226.     Plaintiff Lynn Miller was employed between 1987 to 1990 and again between 2007 to 2011, in Store Number 0987 and 0823.

227.     During her employment, she held the positon of part-time cashier in Store 823. She also filled in to other departments, as help was needed. She regularly filled in for job duties that men refused to do, like washing dishes, which her coworker Fernando said was a "woman's job."

228.     Upon information and belief, men in the same position were compensated at a higher rate, despite less experience.

**Plaintiff Tanisha Matthews-Wright**

229.     Plaintiff Tanisha Matthews-Wright was employed between 2007 to 2011 in Store Numbers 1511 and 4260.

230.     During her employment, she learned that men in her same position were consistently making more than her, despite less or similar experience.

231.     She sought opportunities to higher-paying departments, like sporting goods or electronics, but the men were given those positions, while women were placed in jewelry or cashier, making less.

**Plaintiff Zomora Grant**

232.     Plaintiff Zomora Grant was employed in 2006 in Store Number 0931.

233.     During her employment, she learned that a male in a cashier position was making more than her, despite same/similar experience.

234.     Further, as a sales associate in the pet department, she learned that her male coworkers, like Theo, were making more – despite starting employment at the same time.

**Plaintiff Connie Gamarra**

235.    Plaintiff Connie Gamarra was employed between 1999 and 2001 in Store Number 2091.

236.    During her employment, she had to fight for raises – even just a $.03 raise, but it was well known that the men in the similar positions were making more.

**Plaintiff Colleen Wool (Parker)**

237.    Plaintiff Colleen Wool was employed between 2001 and 2004 in Store Numbers 1390, 244, and 1712.

238.    She began work in 2001 as a Cashier then later became a backup CSM (Customer Service Manager).

239.    During her employment, she was making approximately $7.25 per hour but never more than $8.00.

240.    While she worked as a CSM, there were male employees hired as cashiers. These employees had no prior Wal-Mart experience and Ms. Wool was required to train them.

241.    These particular male employees (like Joe) were making more per hour than her even though she was the Customer Service Manager over the cashiers.

**Plaintiff Margaret Hammell**

242.    Plaintiff Margaret Hammell was employed between March 1998 and September 1999 in Store Number 1004.

243.    During her employment, she worked under Store Manager Larry Dollar.

244.    During her employment, she learned that men in her same position were consistently making more than her, despite less or similar experience.

**Plaintiff Maryellen Dunne**

245.     Plaintiff Maryellen Dunne was employed between 1996 to 2006 in Store Numbers 1702 and 3538.

246.     During her employment, she sought raises, but was denied, even for a mere $.02 raise after ten (10) years of employment.

247.     During her employment, she learned that men in her same position were consistently making more than her, despite less or similar experience.

**Plaintiff Lioudmila Dyer**

248.     Plaintiff Lioudmila Dyer was employed between 2001 and 2008 in Store Numbers 2881, 5299, 5420, 0725, and 5299.

249.     Prior to joining Wal-Mart, she earned a Ph.D. in Economics.

250.     During her employment, she began as a cashier and then worked her way up to an Accounting Office Associate, and then Leader of the Accounting Office.

251.     During her employment, she learned that men in her same position were consistently making more than her, despite less or similar experience.

**Plaintiff Francis Livingston**

252.     Plaintiff Francis Livingston was employed between 1994 and 2006 in Store Number 2627.

253.     During her employment, she worked several positions : Associate in Toy Department, Cashier, Customer Service – Returns in customer service, Sales Associate in Layaway, Customer Service Manager, Cash Office Assistant, Layaway Department Manager, Department Manager of girls wear, Sales Associate in lingerie.

254.     While she was employed she found out that there were several male employees with less experience making more than her.

255.    For instance, while she was Customer Service Manager there were other male Customer Service Managers and Department Managers (when she was in each respective position) making more money, such as Kareem, Joe (Department Manager), Bryan (Associate when she was a Department Manager), Sidney (Customer Service Manager), and Winston (Department Manager)

256.    Beginning in 1998, she began to express managers that she was seeking the position of Layaway Department Manager; she applied several times.

257.    During one conversation with her Manager Randy Narcisse he told her that "I prefer to have a guy in that position because I don't want you calling me every 5 minutes on how to work a palette jack".

258.    She was told several times that they "don't not want women in managerial positions."

259.    Specifically, Kevin Perry told her "he prefers men in those positions."

260.    After two years of diligently seeking this position she was given the position. Unfortunately, she was given the title of Department Layaway Manager, but did not receive salary for this position.

**Plaintiff Cathy Reuss**

261.    Plaintiff Cathy Reuss was employed between 1996 and 2004 in Store Numbers 0987 and 0224.

262.    Prior to working with Wal-Mart, she gained experience at a retail store, Famous Bar and earned an Associate's Degree in Business.

263.    During her employment, she began as an Assistant Manager and then took a position of Department Manager.

264.    She learned that men in her similar positions were making more, such as Jason, who was a Department Manager in the Grocery Department, who made $18.00, while the most she made during her employment was $10.50.

**Plaintiff LaTonya Brisco-Thompson**

265.    Plaintiff LaTonya Brisco-Thompson was employed between 1997 to 2003 in Store Numbers 0890.

266.    Prior to joining Wal-Mart, she worked as a Front End Team Leader for Miami Subs and also as a cashier at Publix. She also had two years of college course study.

267.    Ms. Brisco-Thompson began as a cashier and then was promoted to the position of Customer Service Representative.

268.    Though she sought the position of Customer Service Manager, the position always went to a less experienced male.

269.    She learned that males in her similar position were getting paid more than her, despite similar or less experience.

**Plaintiff Margo Owens-Wooten**

270.    Plaintiff Margo Owens-Wooten was employed between 2003 and 2004 in Store Number 0943.

271.    Prior to joining Wal-Mart, Ms. Owens-Wooten gained experience working at Publix.

272.    Initially, Ms. Owens-Wooten was promoted the position as Meat Manager, but when she got to work, she learned the position was going to the male.

273.    She was asked to work underneath him.

274.    While employed, she learned that men were paid significantly more, despite similar or less experience.

275.    For instance, on average, the women in her position were making approximately $8.00 to $9.00 per hour, wherein the males were making $12.95 or more per hour.

**Plaintiff Angel Stump-Wolfe**

276.    Plaintiff Angel Stump-Wolfe was employed between 1998-2007 in Store Numbers 2857 and 0931.

277.    Prior to joining Wal-Mart, she earned her High School Diploma.

278.    During her employment, she began as a cashier in the jewelry department.

279.    She learned that males were paid more than females on a consistent basis, despite similar or less experience.

**Plaintiff Mary-Kay Dobbs**

280.    Plaintiff Mary-Kay Dobbs was employed between 1985 to 2002 Store Numbers 987, 819, and 531.

281.    While employed, she held the following positions: Cashier (#531), Snack Bar,( #987, Snack Bar (#819), Snack Bar Manager( #987) continued as Snack Bar Manager ( #987), Vision Center Invoice Clerk ( #987).

282.    Her hourly rate was approximately $3.85 to $11.25 throughout her employment.

283.    While employed, she learned that males with similar or less experience were consistently paid more than her and her female coworkers.

**Plaintiff Barbara Solomon**

284.    Plaintiff Barbara Solomon was employed between 1998 to 2000 in Store Numbers 1845.

285.     During her employment, she began as a Front End Cashier and then was moved to Department Manager of Sporting Goods and the Automotive Department.

286.     Prior to Wal-Mart, she gained experienced working as a cashier at another retail store and also took college courses.

287.     While employed, she learned that males with similar or less experience were consistently paid more than her and her female coworkers.

288.     She was harassed by her Store Manager, Shawn Reily, who made comments like "you can't climb that ladder; you're overweight;" and "men are better than women."

**Plaintiff Sherry Richardson**

289.     Plaintiff Sherry Richardson was employed between 2001 and 2013 in Store Number 5250.

290.     During her employment, she trained both men and women for the cashier position and would learn their salaries.

291.     She learned that less experienced males were making more, despite just starting out with Wal-Mart and even though she was training them for the position.

**Plaintiff Tamiko McNurlan**

292.     Plaintiff Tamiko McNurlan was employed between March 1999 and February 2005 in Store Number 942 in Caselberry, Florida, and 4515 in Bullhead, Arizona.

293.     During her employment, she worked as a Product Demonstrator and Assistant Coordinator for Demo.

294.     When she started, she was earning $6.50 and over the course of her employment she was raised to approximately $12.50.

295.    When she was hired there was a male employee by the name of Troy who was hired with her.

296.    Ms. McNurlan and Troy were given the same training. During a conversation with Troy he told me he was making $1.00 more per hour than her.

297.    It was not uncommon for Wal-Mart to hire male employees and for her to train them. However, she learned they were earning more than her.

**Plaintiff Iris Cassett Marchand**

298.    Plaintiff Iris Cassett Marchand was employed between 2001 and 2011 in Store 2963.

299.    During employment, she learned that similar or less experienced males were making more than her and similarly situated females.

**Plaintiff Donna Williams**

300.    Plaintiff Donna Williams was employed between 1995 and 2001 in Venice, Florida, Store 769.

301.    During her employment, she began as a cashier and was later promoted to Customer Service Manager.

302.    She worked with a male, Hank (Last Name Unknown), who also held the position of Customer Service Manager.

303.    Ms. Williams learned that Hank was compensated at a higher rate than her, despite same or less experience.

304.    When she questioned management about the disparity, she was told "men are the bread winners and have families to support, so they have to make more than the women."

## STATEMENT OF CLAIMS

## COUNT I—VIOLATION OF TITLE VII
## DISPARATE TREATMENT-REGION 10

305.    Plaintiffs, Kimberly Austin-Johnson, Catherine Jacobson, Gloria Maimone, Fawn Ehrenreich, Lynn Miller, Tanisha Matthews-Wright, Zomora Grant, Connie Gamarra, Colleen Wool (Parker), Margaret Hammell, Maryellen Dunne, Lioudmila Dyer, Francis Livingston, Cathy Reuss, LaTonya Brisco-Thompson, Margo Owens-Wooten, Angel Stump-Wolfe, Donna Williams, Mary-Kay Dobbs, Barbara Solomon, Sherry Richardson, Tamiko McNurlan, Iris Cassett Marchand incorporates and realleges paragraphs 1 through 304  herein.

306.    Wal-Mart violated Title VII by paying Plaintiffs less than similarly-qualified or less-qualified male employees.

307.    Wal-Mart's discriminatory practices described above have denied Plaintiffs and other female employees in the store(s) where Plaintiffs have worked compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

308.    Wal-Mart denied Plaintiffs' pay equal to that earned by similarly situated men.

309.    Wal-Mart's conduct of discriminating against Plaintiffs by making compensation on the basis of gender violates Title VII of the Civil Rights Act of 1964.

310.    Wal-Mart's discriminatory practices described above have denied Plaintiffs compensation to which she is entitled, which has resulted in the loss of past and future wages and other job benefits.

311.    Wal-Mart's actions or inactions were based in malice or a reckless indifference to the protected rights of Plaintiffs, entitling them to an award of punitive damages.

312.    Plaintiffs therefore, requests relief as provided in the Prayer for Relief below.

## COUNT II—VIOLATION OF TITLE VII
## DISPARATE TREATMENT-REGION 46

313.     Plaintiffs, Pamela Peck, Tiffany Welch, Nancy Baisden, Myra Brown, Rachel Ray, Monica Urban-Klohn, Susan Jeffers, Lucy Giacobbi Sotomayor Ray, Tiffany Welch, Deborah Holloway, Carolyn Holmes, Carla Alston, Barbara Symanski, Billie Brendlinger, Cindy Lyman, Ronda Thomson-Spears, Rhonda Gallipoli, Jewel Price, Toni Burton, Cynthia Boss, Lucille Kline, and Candi Allred incorporates and realleges paragraphs 1 through 304 herein.

314.     Wal-Mart violated Title VII by paying Plaintiffs less than similarly-qualified or less-qualified male employees.

315.     Wal-Mart's discriminatory practices described above have denied Plaintiffs and other female employees in the store(s) where Plaintiffs have worked compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

316.     Wal-Mart denied Plaintiffs' pay equal to that earned by similarly situated men.

317.     Wal-Mart's conduct of discriminating against Plaintiffs by making compensation on the basis of gender violates Title VII of the Civil Rights Act of 1964.

318.     Wal-Mart's discriminatory practices described above have denied Plaintiffs compensation to which she is entitled, which has resulted in the loss of past and future wages and other job benefits.

319.     Wal-Mart's actions or inactions were based in malice or a reckless indifference to the protected rights of Plaintiffs, entitling them to an award of punitive damages.

320.     Plaintiffs therefore, requests relief as provided in the Prayer for Relief below.

## COUNT III—VIOLATION OF TITLE VII
## DISPARATE IMPACT-REGION 10

321.    Plaintiffs, Kimberly Austin-Johnson, Catherine Jacobson, Gloria Maimone, Fawn

Ehrenreich, Lynn Miller, Tanisha Matthews-Wright, Zomora Grant, Connie Gamarra, Colleen

Wool (Parker), Margaret Hammell, Maryellen Dunne, Lioudmila Dyer, Francis Livingston,

Cathy Reuss, LaTonya Brisco-Thompson, Margo Owens-Wooten, Angel Stump-Wolfe, Donna

Williams, Mary-Kay Dobbs, Barbara Solomon, Sherry Richardson, Tamiko McNurlan, Iris

Cassett Marchand incorporates and realleges paragraphs 1 through 304 herein.

322.    Wal-Mart has maintained a system for making decisions about compensation that

has had an adverse impact on its female employees in the store(s) where Plaintiffs have worked.

Its compensation policies for setting and adjusting pay collectively and individually, including its

failure to require or use job-related criteria for making compensation decisions, has had an

adverse impact on women.

323.    Wal-Mart has failed in the store(s) where Plaintiffs have worked to create or

maintain the data that would allow analysis of the impact of each of these policies and practices

individually. Nor does Wal-Mart specify the weight that should be accorded to each of the

requirements for pay. Wal-Mart's pay policies and procedures are thus not capable of separation

for analysis, and accordingly the entire decision-making process for compensation decisions may

each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

324.    Wal-Mart's compensation policies are not job-related or consistent with business

necessity.  Wal-Mart's own consultants and human resources staff have proposed job posting,

elimination of relocation requirements, adoption of more consistent and reliable scheduling, and

the use of more objective criteria for management promotions.  Adopting these policies would have resulted in less discriminatory impact upon female employees in the Region, while serving Wal-Mart's business needs more effectively than its current practices.

325.    Wal-Mart's discriminatory practices described above have denied Plaintiffs and other female employees in the store(s) where Plaintiffs have worked compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

326.    Plaintiffs request relief as provided in the Prayer for Relief below.

## COUNT III—VIOLATION OF TITLE VII
## DISPARATE IMPACT-REGION 46

327.    Plaintiffs, Pamela Peck, Tiffany Welch, Nancy Baisden, Myra Brown, Rachel Ray, Monica Urban-Klohn, Susan Jeffers, Lucy Giacobbi Sotomayor Ray, Tiffany Welch, Deborah Holloway, Carolyn Holmes, Carla Alston, Barbara Symanski, Billie Brendlinger, Cindy Lyman, Ronda Thomson-Spears, Rhonda Gallipoli, Jewel Price, Toni Burton, Cynthia Boss, Lucille Kline, and Candi Allred incorporates and realleges paragraphs 1 through 304 herein.

328.    Wal-Mart has maintained a system for making decisions about compensation that has had an adverse impact on its female employees in the store(s) where Plaintiffs have worked. Its compensation policies for setting and adjusting pay collectively and individually, including its failure to require or use job-related criteria for making compensation decisions, has had an adverse impact on women.

329.    Wal-Mart has failed in the store(s) where Plaintiffs have worked to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually. Nor does Wal-Mart specify the weight that should be accorded to each of the requirements for pay. Wal-Mart's pay policies and procedures are thus not capable of separation

for analysis, and accordingly the entire decision-making process for compensation decisions may each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

330.    Wal-Mart's compensation policies are not job-related or consistent with business necessity.  Wal-Mart's own consultants and human resources staff have proposed job posting, elimination of relocation requirements, adoption of more consistent and reliable scheduling, and the use of more objective criteria for management promotions.  Adopting these policies would have resulted in less discriminatory impact upon female employees in the Region, while serving Wal-Mart's business needs more effectively than its current practices.

331.    Wal-Mart's discriminatory practices described above have denied Plaintiffs and other female employees in the store(s) where Plaintiffs have worked compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

332.    Plaintiffs request relief as provided in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.      All damages which the Plaintiffs have sustained as a result of Wal-Mart's conduct, including back pay, front pay, compensatory damages, and damages for lost compensation and job benefits that they would have received but for the discriminatory practices of Wal-Mart;

b.      Exemplary and punitive damages in an amount commensurate with Wal-Mart's ability to pay and to deter future conduct;

c.      A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. § 2000(e), et. seq., Title VII of the Civil Rights Act of 1964;

  d.  Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

  e.  Pre-Judgment and Post-Judgment interest, as provided by law; and

  f.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues, claims, actions, and defenses in this case.

Dated this 1st day of February 2018.

      Respectfully submitted,

      s/ Cathleen Scott
      Cathleen Scott, Esq.
      Florida Bar No.: 135331
      Cscott@scottwagnerlaw.com
      Lindsey Wagner, Esq.
      lwagner@scottwagnerlaw.com
      **Scott Wagner and Associates, P.A.**
      Jupiter Gardens
      250 South Central Boulevard, Suite 104
      Jupiter, FL 33458
      Telephone: (561) 653-0008
      Facsimile: (561) 653-0020

      Leslie M. Kroeger, Esq.
      Florida Bar No.: 989762
      lkroeger@cohenmilstein.com
      Diana L. Martin
      Florida Bar No. 624489
      dmartin@cohenmilstein.com
      **Cohen Milstein Sellers & Toll, PLLC**
      2925 PGA Boulevard, Suite 200
      Palm Beach Gardens, FL 33410
      Telephone: (561) 515-1400
      Facsimile: (561) 515-1401

Joseph M. Sellers, Esq.
JSellers@cohenmilstein.com
Christine E. Webber, Esq.
Cwebber@cohenmilstein.com
**Cohen Milstein Sellers & Toll, PLLC**
1100 New York Ave NW, Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699